**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

**THOMAS F. FARB,**

    **Plaintiff,**

    **v.**

**JOSE R. PEREZ-RIERA, et al.,**

    **Defendants.**

**Civil No. 12-1772 (GAG)**

## OPINION AND ORDER

Thomas F. Farb ("Plaintiff") brought this action against the *ex officio*[1] and private trustees[2] of the Puerto Rico Science, Technology and Research Trust ("Trust") in their individual and official capacities. (Docket No. 5.) This action is brought pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging violations of the First Amendment of the United States Constitution. Plaintiff also brings state law claims alleging violations of Article II, § 4 of the Constitution of the Commonwealth of Puerto Rico; P.R. LAWS ANN. tit 31, § 3375; Puerto Rico Law 100 of June 30, 1959 ("Law 100"), P.R. LAWS ANN. tit 29, §§ 146 *et seq.*; Puerto Rico Law 115 of December 20, 1991 ("Law 115"), P.R. LAWS ANN. tit 29, §§ 194 *et seq.*; Puerto Rico Law 426 ("Law 426"), P.R. LAWS ANN. tit 1, §§ 601 *et seq.*; and Article 1802 of the Civil Code of Puerto Rico ("Article 1802"), P.R. LAWS ANN. tit. 31, § 5141.

The private trustees moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's claims. (Docket No. 10.) Plaintiff opposed this motion (Docket No. 26), the private trustees filed a reply (Docket No. 38), and Plaintiff filed a sur-reply (Docket No. 50). The *ex officio*

---

[1] Jose R. Perez Riera, Miguel A. Munoz Munoz, Juan Carlos Batlle, Juan Carlos Pavia, and Edward Calvesbert Julia.

[2] Gualberto "Gil" Medina, Fabrizio Bonanni, and Mariano Garcia Blanco.

**Civil No. 12-1772 (GAG)**                                  2

trustees, with the exception of Perez-Riera, also moved under 12(b)(6) to dismiss Plaintiff's claims. (Docket No. 43). Plaintiff opposed this motion (Docket No. 70) and the *ex officio* trustees filed a reply (Docket No. 73-1).[3]

After reviewing these submissions and the pertinent law, the court **DENIES** the private trustees' motion to dismiss at Docket No. 10 and **DENIES** the *ex officio* trustees' motion to dismiss at Docket No. 43.

**I.    Standard of Review**

"The general rules of pleading require a short and plain statement of the claim showing that the pleader is entitled to relief." Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009) (citations omitted) (internal quotation marks omitted). "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Under Rule 12(b)(6), a defendant may move to dismiss an action against him for failure to state a claim upon which relief can be granted. See FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. The court must decide whether the complaint alleges enough facts to "raise a right to relief above the speculative level." Id. at 555. In so doing, the court accepts as true all well-pleaded facts and draws all reasonable inferences in the plaintiff's favor. Parker v. Hurley, 514 F.3d 87, 90 (1st Cir. 2008). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere

---

[3] Perez-Riera moved to join the motions to dismiss filed by the private and *ex officio* trustees. (Docket No. 88.)

**Civil No. 12-1772 (GAG)**                3

possibility of misconduct, the complaint has alleged-but it has not 'show[n]' -'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

A plaintiff need not allege sufficient facts to meet the evidentiary *prima facie* standard. See generally Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49 (D.P.R. 2013). *Prima facie* elements "are part of the background against which a plausibility determination should be made." Id. at 54 (external citations omitted). "[T]he elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim." Id. (emphasis added).

**II.  Factual Background**

In late 2009, Garcia Blanco suggested Plaintiff as a possible candidate for the Trust's Executive Director. (Docket No. 5 ¶ 20.) At the time, Plaintiff was residing in Boston and "was President of an early stage medical device company which was developing a product for prostate cancer." (Id. ¶ 21.) According to Plaintiff, Perez Riera, as Chairperson of the Board of Trustees, and the *ex officio* trustees represented to Plaintiff during the recruitment process that they would be working towards the Trust's stated science and technology objectives. (Id. ¶¶ 22-24, 26, 30.) In December 2009, Plaintiff was hired as Executive Director of the Trust. (Id. ¶ 25.) Under his employment contract, Plaintiff had "primary responsibility for managing, supervising and operating the day to day operations, activities and affairs of the [Trust], as directed by the Board of Trustees." (Id. ¶ 27.) In one of Plaintiff's first initiatives, the Board approved Plaintiff's budget and hiring plan. (Id. ¶ 28.)

When Plaintiff was hired, there were two vacant private trustee positions and a third position became vacant in September 2010. (Docket No. 5 ¶ 31.) According to Plaintiff, Law 214 of 2004 ("Law 214"), the Trust's Enabling Act, requires the Board of Trustees be composed of eleven members: five *ex officio* trustees and six trustees from the private sector. (Id. ¶ 29.) Plaintiff attempted to persuade the Board to fill the vacant positions, but alleges the *ex officio* trustees delayed to preserve their majority. (Id. ¶ 32.) Perez Riera ignored or indefinitely postponed Plaintiff's attempts to schedule interviews between the *ex officio* trustees and candidates nominated

**Civil No. 12-1772 (GAG)**                              4

by the private trustees. (Id. ¶ 33.) He interviewed one candidate nominated by the private trustees, but instead chose to propose two candidates of his own who were less qualified for the position. (Id. ¶¶ 34-35.) The two candidates proposed by Perez Riera were loyal to the New Progressive Party ("NPP") administration and would not pose an obstacle to the private agenda of the *ex officio* trustees. (Id. ¶ 36.) One of the candidates worked as Under Secretary at the Department of Economic Development and Commerce ("DEDC") and reported directly to Perez Riera, who is Secretary of DEDC. (Docket No. 5 ¶¶ 2, 36.) Presently, half of the private trustee positions remain unfilled and the *ex officio* trustees maintain a majority of the Board. (Id. ¶ 37.)

According to Plaintiff, Law 214 also requires the Trust to employ an internal auditor. (Id. ¶ 38.) This position was unfilled at the time Plaintiff was hired. (Id.) Prior to Plaintiff's recruitment, the vacant General Auditor position was cited as "Internal Control Deficiency" in external audits. (Id. ¶ 39.) Plaintiff proposed a candidate for the internal auditor position, but Perez Riera and the *ex officio* trustees stated they would have to interview the candidate before presenting him to the Board for a vote. (Id. ¶¶ 40-41.) Perez Riera interviewed the candidate, but refused to decide whether to present the candidate to the Board. (Docket No. 5 ¶ 42.) Plaintiff alleges Perez Riera's actions "were an attempt to passively block the hiring of any personnel that would be incompatible with, or limit the resources he could later dedicate to, his private agenda for the [Trust]." (Id. ¶ 43.) As a result, the Trust had twelve unfilled positions. (Id.)

Perez Riera and the *ex officio* trustees also prevented the celebration of Board meetings. (Id. ¶ 44.) "The celebration of Board meetings was vital to the normal functioning of the [Trust] because Farb needed the Board's approval for any expenditure over $50,000." (Id. ¶ 45.) By avoiding Board meetings, Plaintiff could not comply "with the approved hiring plan and the [Trust's] statutory objectives." (Id. ¶ 46.) Plaintiff was unable to convene Board meetings due to obstacles created by Perez Riera. (Docket No. 5 ¶ 48.) One of the justifications for Plaintiff's dismissal was the infrequent celebration of Board meetings. (Id.)

In late 2010, Perez Riera secured the presentation to propose an amendment to Law 214. (Id.

**Civil No. 12-1772 (GAG)**               5

¶ 49.) The proposed amendment ("PS1839") "would permit the [Trust's] resources to be destined to any activity which would promote the 'general economic development of Puerto Rico.'" (Id. ¶ 50.) According to Plaintiff, this modification to "the legally defined mission and use of the [Trust's] funds" would allow Perez Riera and the *ex officio* trustees "to steer the [Trust] away from its focus on science and technology." (Id. ¶¶ 49-50.) Plaintiff claims PS1839 was part of Perez Riera's plan to "turn the [Trust] into an instrument of his political agenda." (Id. ¶ 51.) Plaintiff testified before a Senate committee considering the bill and was asked about the *ex officio* trustees' actions to block the implementation of Law 214. (Docket No. 5 ¶ 52.) In early 2011, Plaintiff began lobbying for amendments to PS1839 to protect the Trust's original purpose. (Id. ¶ 53.) His suggested amendments to PS1839 were not introduced into the bill. (Id.) Plaintiff enlisted the help of several NPP members of the legislature to secure adequate functioning of the Trust and implementation of Law 214. (Id. ¶ 54.) As a result, Perez Riera and Plaintiff, among others, attended a private meeting called by Senate President Thomas Rivera Schatz. (Id. ¶ 56.) In the meeting, Perez Riera learned that Plaintiff provided legislatures with information regarding Perez Riera's actions. (Id.) Plaintiff alleges Perez Riera requested the trustees' attorneys to prepare a memorandum regarding Plaintiff's performance as Executive Director in order to plan a scheme to terminate him. (Docket No. 5 ¶ 58.) Plaintiff alleges the memorandum was not a product of any objective analysis, but a "direct reaction to Farb's actions." (Id. ¶ 59.)

During summer 2011, Plaintiff spoke to several newspapers about the Trust's problems. (Id. ¶ 60.) Plaintiff stated that the *ex officio* trustees were trying to control the activities of the Trust by blocking the implementation of Law 214. (Id.) Perez Riera sent Plaintiff an email to ensure Plaintiff would not create any further controversy at a previously scheduled speaking engagement with the President's Commission on the Status of Puerto Rico. (Id. ¶ 61.) Later, Perez Riera scheduled a Board meeting to discuss the attorneys' memorandum. (Id. ¶ 62.) Plaintiff alleges the meeting was scheduled in violation of the Trust's Bylaws. (Docket No. 5 ¶ 62.) The meeting was canceled after the private trustees objected. (Id. ¶ 63.)

**Civil No. 12-1772 (GAG)**                                    6

In July 2011, Plaintiff called for an investigation into the actions of Perez Riera, the *ex officio* trustees, and the law firms of the trustees and the Trust. (Id. ¶ 64.) Reviewing the billing statements, Plaintiff noticed Perez Riera and the *ex officio* trustees were performing work that was not compatible with the objectives of the Trust. (Id. ¶ 65.) The *ex officio* trustees gave the law firms and an independent investigator power to investigate Plaintiff's actions with the Trust. (Id. ¶¶ 66, 68, 70.) Plaintiff alleges the investigation was "a means to fabricate just cause where there was none in order to terminate Farb immediately and without having to comply with the severance clause of his contract." (Id. ¶ 69.) Plaintiff petitioned NPP members of the legislature to open an investigation into the Trust's activities. (Docket No. 5 ¶ 67.) In August 2011, the House of Representatives presented Draft Resolution No. 1758 to conduct a formal investigation of the Trust's activities. (Id.) The investigation was never conducted. (Id.)

In October 2011, Plaintiff was terminated. (Id. ¶ 72.) Plaintiff alleges "the reasons cited for his termination were the findings of the 'independent' investigation," though he never received a copy of the results of the investigation. (Id.) According to Plaintiff, his unlawful termination was in retaliation for his efforts to pursue the objectives of the Trust. (Id. ¶ 73.) Plaintiff further alleges his efforts to bring the Trust in compliance with its Enabling Act were in direct conflict with the *ex officio* trustees' vision for the Trust. (Docket No. 5 ¶¶ 73-74.) Perez Riera and the *ex officio* trustees also "attacked" Plaintiff in the press. (Id. ¶ 75.) They said Plaintiff "was terminated for his mismanagement of the [Trust] and his administrative inability to perform his contractual duties." (Id.) On October 19, 2011, Governor Luis Fortuno signed PS1839 into law. (Id. ¶ 76.) Plaintiff claims the Trust's resources may now be used towards any type of economic activity, whether or not it relates to science and technology. (Id.)

### III. Discussion

#### A. Order to Show Cause

On February 26, 2013, the court ordered the parties to show cause as to why Plaintiff's First Amendment political discrimination and retaliation claims should not be dismissed. (Docket No.

**Civil No. 12-1772 (GAG)**                                        7

30.) Subsequently, the First Circuit issued Rodriguez-Reyes, which clarified that Plaintiff does not need to allege sufficient facts to meet the evidentiary *prima facie* standard at the motion to dismiss phase. Consequently, the court abstains from making this determination on the First Amendment claims, reserving it for the summary judgment stage. However, the court will discuss whether the Trust is a private or public entity. This issue was presented by the parties in their motions in compliance with the court's order to show cause and is pertinent to the outcome of several of Plaintiff's claims that protect the rights of public officers and employees. If Plaintiff is a private employee, the claims protecting public employees would be dismissed because Plaintiff will have failed to demonstrate a government action.

As expected, the trustees argue the Trust is a private entity and that Plaintiff, being a private employee, does not have First Amendment protection with respect to the trustees. In support of this assertion, the trustees claim that the Exposition of Motives of Law 208 of 2011 ("Law 208") expressly recognizes that the Trust is a "private non-for-profit trust." (Docket No. 38 at 3.) However, the trustees did not submit a certified English translation of this provision and do not present any other arguments in support of their assertion. Even if the trustees had submitted a certified English translation of the Exposition of Motives of Law 208, it is unclear whether such a self-defined characterization would be sufficient in light of Plaintiff's evidence to the contrary.

Plaintiff refers to several provisions of Law 214 to support his assertion that the Trust is a public entity. Plaintiff points out that Law 214 confers upon the Trust the power to delegate the execution of measures, plans, and projects to any agency of the government of Puerto Rico.[4] (Docket No. 70 at 10.) Furthermore, the Trust receives public funding,[5] is tax exempt,[6] and is

---

[4] P.R. LAWS ANN. tit 23, § 695c.

[5] The Trust is funded by "[t]wenty percent (20%) of the moneys covered into the Economic Development Special Fund administered by the Puerto Rico Industrial Development Company . . . ." P.R. LAWS ANN. tit 23, § 695d(a)(1). It is also funded by a "special appropriation of five

**Civil No. 12-1772 (GAG)**                              8

subject to the duties and powers of the Office of Management and Budget.[7] (Id.)

After reviewing Law 214, and lacking a persuasive argument from the trustees, the court finds the Trust is a public entity for purposes of the instant motions to dismiss. Based on the aforementioned, there is no legal conclusion to support a finding that the Trust is a private entity.

**B.     Private Trustees' Motion to Dismiss**

In their motion to dismiss, the private trustees argue that: (1) on its face, the amended complaint fails to state a claim against them; (2) Plaintiff cannot include them for jurisdictional purposes only; (3) they are immune from liability under the applicable statute; and (4) pursuant to Fraguada v. Hosp. Auxilio Mutuo,[8] all non-contractual claims, except Law 115, are time-barred. (Docket No. 10.) With respect to the private trustee's first and second arguments, the parties dispute whether Law 214 or Law 208 applies and whether the party to the employment agreement was solely the Trust or includes the trustees.

**1.     Law 214 of 2004 and Law 208 of 2011**

Either Law 214 or Law 208 applies to the instant case. Plaintiff argues his claims were properly raised against the trustees pursuant to Law 214. (Docket No. 26 at 3.) The trustees argue that all of Plaintiff's claims should be raised solely against the Trust pursuant to Law 208. (Docket No. 10 at 11-12.)

---

million dollars ($5,000,000) from the Public Improvements Fund for fiscal year 2004-2005 . . .", "[f]ive million dollars ($5,000,000) per year beginning each fiscal year 2005-2006, proceeding from the balance of the moneys collected on account of the federal excise taxes sent to the Department of the Treasury of Puerto Rico each fiscal year," among other moneys. Id. at (a)(3)(4).

[6] P.R. LAWS ANN. tit 23, § 695g.

[7] P.R. LAWS ANN. tit 23, § 695i.

[8] 186 D.P.R. 365, 2012 PR Sup. LEXIS 124 (2012). The private trustees filed a certified English translation at Docket No. 13-2.

**Civil No. 12-1772 (GAG)**                              9

Law 214 provides that the Council of Trustees has "the power to sue and be sued as trustees as representatives of the Trust."[9] P.R. LAWS ANN. tit 23, § 695c. Law 208, which amends the Trust's Enabling Act, states in Article 4(a):

> The Trust, as a juridical entity with its own personality shall have all of the powers and faculties expressly conferred upon it by the Deed of Constitution, subject to Articles 834 to 860 and 863 to 869, inclusive, of the Civil Code of Puerto Rico of 1930, as amended, to the extent that they are not contrary to this Law, including the right to sue and be sued. (Docket No. 13-1.)

Plaintiff argues that Law 208 does not have retroactive effect and that Law 214 applies to his case. The private trustees do not dispute Law 208 does not have retroactive effect and that all the factual allegations in the amended complaint occurred prior to the passage of Law 208. Thus, the court finds that Law 208, not being retroactive, is inapplicable and that Law 214 applies to this case.

The private trustees argue Plaintiff needed to sue the Trust because it has always had its own legal personality. (Docket No. 10 at 11-12.) Law 208 provides the Trust with its own personality in the language itself, while Law 214 provides the Trust with legal existence through Articles 849 and 853.[10] (Docket No. 61-1 at 2.) They further argue that the Puerto Rico Court of First Instance

---

[9] The parties offer their own uncertified translations of P.R. LAWS ANN. tit 23, § 695c(a). The parties' translation gives the council of trustees "the power to sue and be sued as Trustees **in representation of the Trust**," rather than "as representatives of the Trust." (Docket Nos. 26 at 2 & 61-1 at 2.) This court finds that the parties' translations may change the meaning of the Board of Trustees' powers and will only consider the official translation.

[10] Article 849 of the Puerto Civil Code provides:

> The legal existence of a trust shall begin at the time when the trustee accepts the mandate and, once accepted, the mandate becomes irrevocable. The acceptance may be express or implied, the implication being based on the acts of the trustee in furtherance of the trust.

P.R. LAWS ANN. tit 31, § 2556.

Article 853 of the Puerto Rico Civil Code provides:

**Civil No. 12-1772 (GAG)**                    10

ruled that the Trust has legal personality. (Docket No. 71-1.) The court finds that even if, as the trustees argue, the Trust always had a legal personality, this does not provide an exclusive remedy for Plaintiff, thereby barring all suits against the trustees. Law 214 clearly states that the Council of Trustees has the power to sue and be sued. Therefore, pursuant to Law 214, the trustees can be sued.

### 2.       Employment Agreement

The employment agreement also suggests Plaintiff can sue the trustees. The private trustees argue that they are not parties to Plaintiff's employment agreement and that Plaintiff was required to sue the Trust. (Docket No. 38 at 16.) "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). However, there is a "narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson, 987 F.3d at 3). Here, the private trustees, *ex officio* trustees, and Plaintiff discuss the employment agreement and do not dispute its authenticity.[11]

The first sentence of the employment agreement states: "This EMPLOYMENT AGREEMENT ("Agreement") is made and entered as of this 28th day of December, 2009, by and between Thomas Forest (the "Employee") and THE TRUSTEES OF THE PUERTO RICO SCIENCE, TECHNOLOGY AND RESEARCH TRUST (the "Trust")." (43-1 at 1.) Although

---

> The legal existence of a trust shall terminate at the time decided upon by express and personal agreement of all parties or at the time decreed by a court of competent jurisdiction.

P.R. LAWS ANN. tit 31, § 2560.

[11] The private trustees attached an employment agreement missing pages. (Docket No. 38-1.) The *ex officio* trustees filed a complete employment agreement. (Docket No. 43-1.)

**Civil No. 12-1772 (GAG)**                    11

"Trust" is included in parenthesis, the sentence includes the trustees of the Trust. Crucial to the court's determination is that below the sentence, the employment agreement lists the names of all the *ex officio* and private trustees. (Id.) Following the list, the agreement states the "Trustees are represented in this act by the President of the Board of Trustees, Jose R. Perez-Riera . . . ." (Id. at 1-2.) The employment agreement was signed by Plaintiff and the DEDC, acting on behalf of Perez-Riera. (Id. at 13.) The trustees were being represented when the Deputy Secretary signed the agreement on Perez-Riera's behalf. The agreement also indicates that "the Board of Trustees has authorized the execution of this Agreement with the Employee." (Id. at 2.)

The private trustees argue it is clear Plaintiff worked for the benefit of the Trust and not for the benefit of the trustees.[12] They quote the agreement: "The Employee [Farb] has primary responsibility for managing, supervising and operating the day to day operations, activities and affairs of the Trust . . . ." (Docket No. 38 at 16.) However, the private trustees fail to quote the entire sentence. The sentence concludes with the phrase "as directed by the Board of Trustees." (Docket No. 43-1 at 2.) They also quote the agreement that indicates the employee shall "devote his best efforts and business time and attention to the performance of his duties as Executive Director and to promoting the best interest of the Trust." (Id.) Even if Plaintiff needed to act in the best interest of the Trust, the reasons set forth above show the employment agreement was between Plaintiff and the Board of Trustees.

Accordingly, the court finds Plaintiff can sue the trustees and **DENIES** the trustees' motions to dismiss Plaintiff's claims against them.

### 3. Immunity

The private trustees claim they are entitled to immunity granted by Law 208.[13] Article 3(h)

---

[12] The *ex officio* trustees present the same argument. (Docket No. 43 at 12.)

[13] The private trustees argue they are entitled to immunity granted by the Trust's Enabling Act, but quote Article 3(h) of Law 208 instead.

**Civil No. 12-1772 (GAG)**                12

of Law 208, which amends the Trust's Enabling Law, states:

> The members of the Board of Trustees shall not be responsible in their personal capacity in cases claiming monetary compensation for damages derived from their actions, or the breach of their fiduciary duties, as members of the Board of Trustees, except for actions or omissions that are not in good faith or that consist of intentional improper conduct or willful violations of the law, or for any transaction where the member receives an undue personal benefit.

(Docket No. 13-1.) The court finds Law 214, and not Law 208, applicable in this case. Assuming *arguendo* that Law 208 applies, the private trustees admit the immunity granted to the trustees is qualified, not absolute. (Docket No. 10 at 13.)

Accordingly, the private trustees' motion to dismiss Plaintiff's claims against them on immunity grounds is **DENIED**.

### 4. Non-Contractual Claims[14]

The private trustees argue that all non-contractual claims, except Law 115, are time-barred pursuant to Fraguada. In his opposition to the motion to dismiss, Plaintiff states, "The Private Trustees were sued as parties to a contract, in order to preserve a contractual claim." (Docket No. 26 at 4.) He further states, "In the present case, it has already been clearly stated that the Private Trustees were included for purposes of the breach of contract claims." (Id. at 5.) It is clear from Plaintiff's opposition that the private trustees were included in the complaint for purposes of the breach of contract claims only. Accordingly, the private trustees' argument that all non-contractual

---

[14] The private trustees are included in the amended complaint "solely for jurisdictional reasons." (Docket No. 5 ¶¶ 7-9.) The amended complaint only mentions private trustees twice in the general allegations. First, Plaintiff alleges, "His voice was not the only critical voice however, as the three private Trustees sent a detailed personal letter to Governor Luis Fortuno Burset in April 2011, denouncing Perez Riera's blocking of the activities of the [Trust], calling for corrective action and supporting Farb's capabilities and efforts at the [Trust]." (Id. at ¶ 55.) Second, Plaintiff alleges that a board meeting Perez Riera scheduled in violation of the Trust's bylaws "was eventually cancelled due to the objections and public denouncements of the private Trustees." (Id. at ¶¶ 62-63.)

**Civil No. 12-1772 (GAG)**                                  13

claims, except Law 115, are time-barred pursuant to Fraguada is misplaced.[15]  The only claims the complaint alleges against the private trustees are for breach of contract.

    **B.**    *Ex Officio* **Trustees' Motion to Dismiss**

        **1.**    **Colorado River Abstention**

In their motion to dismiss, the *ex officio* trustees maintain that the court should refrain from exercising jurisdiction pursuant to the abstention doctrine set forth in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).  According to the *ex officio* trustees, this matter should be litigated through proceedings Plaintiff already filed against them in state court.[16]

"It has long been established that the presence of parallel litigation in a state court will not in and of itself merit abstention in federal court." Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27 (1st Cir. 2010).  Accordingly, the Supreme Court held "that the surrender of jurisdiction in favor of parallel state proceedings for reasons of 'wise judicial administration' is permissible only in 'exceptional' circumstances.  Villa Marina Yacht Sales v. Hatteras Yachts, 915 F.2d 7 (1st Cir. 1990) (citing Colorado River, 424 U.S. at 818).  The First Circuit has warned that the Colorado River abstention is to be approached with great caution, with "[o]nly the clearest of justifications" warranting dismissal.  Jimenez, 597 F.3d at 27 (quoting Colorado River, 424 U.S. at 819).

The First Circuit held the Colorado River abstention doctrine applies if a two-part test is satisfied.  Valle-Arce v. P.R. Ports Auth., 585 F. Supp. 2d 246, 254 (D.P.R. 2008) (citing H&R Block Tax Servs., Inc. v. Rivera Alicea, 570 F. Supp. 2d 255, 266 (D.P.R. 2008)).  The court must first determine "whether the actions in the state and federal forums are parallel," that is, "if they involve the same parties and substantially identical claims, raising nearly identical allegations and

---

[15] Both parties agree Fragauda is limited to non-contractual claims.  (Docket Nos. 10 at 14, 26 at 5.)

[16] Plaintiff filed a counterclaim against the Trust in the Puerto Rico Court of First Instance. (Docket No. 63-1.)

**Civil No. 12-1772 (GAG)**                14

issues." Id. (internal quotation omitted). Second, the court must consider and balance a number of factors set forth in Colorado River to determine whether "exceptional circumstances" justify abstention. Id. at 250-51. The factors set forth in the "exceptional circumstances test" include:

> (1) whether either court has assumed jurisdiction over a res; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Jimenez, 597 F.3d at 27-28 (citing Rio Grande Cmty. Health Ctr. v. Rullan, 397 F.3d 56, 71-72 (1st Cir. 2005)). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." Colorado River, 424 U.S. at 818-19.

Although Plaintiff's amended complaint seems to be a duplicate of his amended counterclaim in state court, the parties in each suit are different. (Docket Nos. 5 & 63-1.) The Trust brought suit against Plaintiff in state court, while Plaintiff in this case brought suit against the trustees. Thus, the first part of the two-part test is not met. Even if the parties in both suits were the same and the first part of the test was satisfied, the Colorado River factors weigh against abstention.

The court quickly summarizes the neutral factors set forth in the "exceptional circumstances test." Both forums are in Puerto Rico and therefore equally convenient (second factor); the Puerto Rico forum is well-equipped to protect the parties' interests (sixth factor); and there is nothing vexatious or contrived about Plaintiff's federal claims (seventh factor).

The parties dispute the remaining five factors. Although the *ex officio* trustees argue that the same *res* (first factor) is being litigated in state and federal court, the court finds this case concerns the resolution of contractual disputes and grievances rooted in federal rights. There is no *res* at issue in this action. This factor does not weigh towards abstention. The *ex officio* trustees also argue that both forums may issue conflicting decisions and create a piecemeal litigation (third factor). "Weight may be afforded to the piecemeal litigation factor only where the implications and practical effects

**Civil No. 12-1772 (GAG)**                15

of litigating the parallel actions provide an exceptional basis for surrendering federal jurisdiction, such as a clear competing policy or some special complication." Nazario-Lugo v. Caribevision Holdings, Inc., 670 F.3d 109, 115 (1st Cir. 2012) (citing Jimenez, 597 F.3d at 29). The *ex officio* trustees, however, do not discuss the piecemeal factor and do not present the court with an exceptional basis to give weight to the piecemeal factor.

The *ex officio* trustees further claim that the state court obtained jurisdiction before the federal court (fourth factor). "[T]he order in which jurisdiction was taken is not a mechanical concept automatically favoring the party who files first, but rather a concept that favors the case that is the more advanced at the time the *Colorado River* balancing is being done." Elmendorf Grafica, Inc. v. D.S. Am. (East), Inc., 48 F.3d 46, 52 (1st Cir. 1995). Plaintiff admits the state case was filed first, but that both courts are currently entertaining initial dispositive motions.

The *ex officio* trustees further argue that state law controls Plaintiffs claims (fifth factor). "It is only in 'rare instances' that the presence of state-law issues creates any momentum toward deferring to pending local litigation under the Colorado River doctrine." Nazario, 670 F.3d at 118. "Such a rarity may arise where the state-law issues 'present particularly novel, unusual or difficult questions of legal interpretation' that are best left to state court resolution. Id. (citing Elmendorf, 48 F.3d at 52). The *ex officio* trustees do not discuss this factor at all and fail to even suggest that the claims involving local law constitute such a rarity.

Lastly, the *ex officio* trustees claim that Plaintiff elected to forego his right to litigate in federal court when he failed to remove the case from state court (eighth factor). "This factor is relevant if a plaintiff attempted to evade the policy choice implicit in 28 U.S.C. § 1441 that only a defendant may remove a lawsuit from state court to federal court." Valle-Arce, 585 F. Supp. 2d at 254 (citing Villa Marina, 915 F.2d at 14). "It applies where a dual filing in state and federal forums has the same effect as if the plaintiff had actually removed the original suit." Id. The *ex officio* trustees do not describe their complaint in state court. The court, therefore, cannot determine whether the state suit would have the same effect as if Plaintiff had removed the Trust's complaint

**Civil No. 12-1772 (GAG)**                       16

from state court. Furthermore, as already discussed, the parties in the state and federal forums are different and the amended complaint in the instant case does not have the same effect as if Plaintiff had removed the original state court action.

After careful consideration of the Colorado River factors, there are no exceptional circumstances present that justify abstention from exercising federal jurisdiction. Accordingly, the court **DENIES** the *ex officio* trustees' motion to dismiss the case pursuant the Colorado River abstention.

### 2. State Law

#### a. Breach of Contract

The *ex officio* trustees claim that the breach of contract claim against them should be dismissed because they were not part of the employment contract. (Docket No. 43 at 27.) They further argue that even if they were part of the employment contract, they did not breach any of the conditions of the contract. They state, "The contract was clear and unambiguous in stating that Plaintiff was to act in accordance of the Trustees' vision of the Trust and their instructions . . . ." (Id. at 29-30.) They further state that "Plaintiff's obligations within the contract were to follow the instructions of the Trustees, whether he agreed with their vision of the Trust or not." (Id. at 30.)

Plaintiff argues that the breach of contract claim "lies in the fact that the *ex officio* Trustees falsely represented to Mr. Farb during his recruitment process that it was their intention to comply with the Trust's statutory obligations." He further states the *ex officio* trustees "fabricated an excuse to terminate him and did not comply with their contractual obligations triggered in the event of a dismissal without just cause." (Docket No. 70 at 4.)

As already discussed, the trustees were a party to the employment agreement. Further, the amended complaint contains sufficient facts alleging the *ex officio* trustees made false representations during contractual negotiations. In particular, Plaintiff alleges that during the recruitment process, the *ex officio* trustees misled him to think they would comply with the Trust's statutory objectives. (Docket No. 5 ¶¶ 12, 78.)

**Civil No. 12-1772 (GAG)**                         17

Accordingly, the *ex officio* trustees' motion to dismiss Plaintiff's breach of contract claim is **DENIED**.[17]

### b.     Defamation

The *ex officio* trustees argue that Plaintiff's claim for defamation under the Libel and Slander Law and the Constitution of Puerto Rico should be dismissed.

Under Puerto Rico law, defamation follows the common law tradition. Aponte v. Calderon, 284 F.3d 184, 197 (1st Cir. 2002) (citing Villanueva v. Hernandez Class, 1991 WL 735303, 28 P.R. Offic. Trans. 618, 128 D.P.R. 618, 646 (1991)). To prove defamation under Puerto Rico law, a private plaintiff must show: "(1) that the alleged defamatory statements are false; (2) that the defamatory statements (written or spoken) were negligently made to another; and (3) that the plaintiff suffered damages." Ojeda-Rodriguez v. Zayas, 666 F. Supp. 2d 240 (D.P.R. 2009) (citing Torres Silva v. El Mundo, Inc. 106 D.P.R. 415 (6 P.R. Offic. Trans. 581) (1977)). Regarding intent, when the defamed party is a public official or figure, the plaintiff must show "that the information was published with actual malice or with knowledge of its falsity or with reckless disregard of whether it was false or not." Villanueva, 1991 WL 735303.

Here, Plaintiff alleges the defamatory statements are false. He claims the *ex officio* trustees "attacked [him] in the press, falsely alleging that [he] was terminated for his mismanagement of the [Trust] and his administrative inability to perform his contractual duties." (Docket No. 5 ¶ 75.) He also alleges he suffered damages. He claims the defamatory publications "caused harm to [his] professional and personal reputation." (Id. ¶ 123.)

Defendants argue that the amended complaint does not mention "the contents of those alleged attacks, the date those statements were made, and in which media outlet those supposed

---

[17] The *ex officio* trustees only moved to dismiss Plaintiff's breach of contract claim based on false representations under the first cause of action. (Docket No. 5 ¶¶ 77-86.) They did not move to dismiss the breach of contract claim based on the contract obligations, such as salary adjustments reflecting cost-of-living increase, reimbursements for health care payments or office rent, and noncompliance with the severance clause under the second cause of action. (Id. at ¶¶ 87-95.)

**Civil No. 12-1772 (GAG)**                18

attacks were made." (Docket No. 43 at 31-33.) They also argue Plaintiff's pleaded facts do not support his claim that the statements were false and negligently made to another. (Id. at 33.) The amended complaint mentions the content of the statements, that they were false, and made in the press. (Docket No. 5 ¶ 75.) As for the date the alleged statements were made, that objection asks for factual specificity that is not required in a complaint. See Alpha Biomedical & Diagnostic Corp. v. Philips Med. Sys. Netherland BV, 828 F. Supp. 2d 425, 435 (D.P.R. 2011) (finding precise dates and times of alleged statements are not required in a complaint) (citing Twombly, 550 U.S. at 555 (noting that complaints do not require "detailed factual allegations")). Finally, the amended complaint does not specifically mention the alleged statements were negligently made. However, the court notes the elements of a *prima facie* case do not need to be established in a complaint and finds that Plaintiff's amended complaint is sufficiently well-pleaded to pass Rule 12(b)(6) muster. Viewing the facts in the light most favorable to Plaintiff, the amended complaint plausibly states a claim for relief from defamation.

Accordingly, the *ex officio* trustees' motion to dismiss Plaintiff's defamation claim is **DENIED**.

### c.   Law 115

Law 115 provides in relevant part:

> (a) No employer may discharge, threaten, or discriminate against an employee regarding the terms, conditions, compensation, location, benefits or privileges of the employment should the employee offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico, when such expressions are not of a defamatory character nor constitute disclosure of privileged information established by law.

The statute also requires the employer to establish, "through direct or circumstantial evidence," a *prima facie* case that he or she (1) "participated in an activity protected by §§ 194 et seq." and (2) "was subsequently discharged." Id. § 194a(c); Lupu v. Wyndham El Conquistador Resort & Golden Door Spa, 524 F.3d 312, 313 (1st Cir. 2008).

In analyzing a *prima facie* case, "[t]he adjudicating Court should consider whether or not the

**Civil No. 12-1772 (GAG)**                              19

Plaintiff has established a causal link or connection between the protected activity and the adverse employment action." Uphoff-Figueroa v. P.R. Elec. Power Auth., 2008 U.S. Dist. LEXIS 112389, at *16-17 (D.P.R. 2008) (citing Hernandez v. Espinosa, 98 TSPR 40, 1998 TSPR 40, 145 D.P.R. 248 (1998)). A showing of a protected activity closely followed by an adverse action is indirect proof of a causal connection between the employment action and the protected activity. Id. at 17. Besides temporal proximity, Plaintiff can present other sources of circumstantial evidence that can substantiate a retaliation claim, including evidence of differential treatment. Id. at 17-18.

Here, the *ex officio* trustees' request for dismissal is based on a lack of causal connection between the protected activity and the ensuing adverse employment action. Plaintiff alleges he started to enlist help of NPP legislators in early 2011, spoke to several newspapers regarding the problems of the Trust in the summer of 2011, and called for an investigation in July 2011. Due to his efforts, the House of Representatives called for a formal investigation of the Trust's activities in August 2011. It was not until October 2011 that Plaintiff was terminated from his employment.

The court notes the elements of a *prima facie* case do not need to be established in a complaint and finds that Plaintiff's amended complaint is sufficiently well-pleaded to pass Rule 12(b)(6) muster. The amended complaint lays out sufficient facts alleging retaliation under Law 115. An analysis of direct and circumstantial evidence will be reserved for summary judgment. Accordingly, the *ex officio* trustees' motion to dismiss Plaintiff's Law 115 claim is **DENIED**.

### d.     Law 426

Law 426, known as the Whistleblower Protection Act, adopts measures for the protection of "the rights of public employees and officials who disclose information or testify on alleged improper or illegal acts regarding the use of public property or funds that due to their nature constitute acts of government corruption, or fall within the ethical conduct regulated by our legal system." P.R. LAWS ANN. tit 1, § 601.

The *ex officio* trustees claim that Law 426, which relates to public employees and officials,

**Civil No. 12-1772 (GAG)**                             20

does not apply because Plaintiff was not a public employee. As discussed above, the Trust is a public entity and Plaintiff is a public employee. Accordingly, the *ex officio* trustees' motion to dismiss Plaintiff's Law 426 claim is **DENIED**.

**IV.    Conclusion**

For the reasons set forth above, the court **DENIES** the private trustees' motion to dismiss at Docket No. 10 and **DENIES** the *ex officio* trustees' motion to dismiss at Docket No. 43.

**SO ORDERED**

In San Juan, Puerto Rico this 31st day of July, 2013.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge